# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0267-19T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

Y.H.B.,

     Defendant-Appellant,

and

D.L.J., SR. (Deceased),

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF D.L.J., JR.,

     a Minor.

_____

Submitted May 27, 2020 – Decided July 6, 2020

Before Judges Accurso, Gilson and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0089-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; James Daniel O'Kelly, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Lisa Doreen Cerasia, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Todd S. Wilson, Designated Counsel, on the brief).

PER CURIAM

Defendant Y.H.B. appeals from the Family Part's August 14, 2019 judgment terminating her parental rights to her third child, her now eleven-year-old-son D.L.J., Jr. (Davon).[1] She contends the Division of Child Protection and Permanency failed to establish the third prong of the best interests standard by clear and convincing evidence. Specifically, defendant argues the Division did not properly conduct permanency planning for Davon, and the Family Part's finding that the Division considered alternatives to

---

[1] The names of family members in this opinion are pseudonyms, employed to protect the child's privacy.

terminating defendant's parental rights was not based on substantial credible evidence in the record. She also argues the Division did not establish its "reasonable efforts" to assist her in light of its failure to consult and cooperate with her in assessing her relatives for placement of Davon. Finally, defendant argues the trial court's factual findings on the third prong were "deficient and incomplete," foreclosing meaningful appellate review.

Davon's Law Guardian joins the Division in urging us to affirm the judgment. Having considered defendant's arguments in light of the record and controlling law, we affirm the termination of her parental rights.

Defendant has had a difficult life. She suffered abuse as a child and spent some period of her childhood in foster care. She has battled drug addiction for many years, sometimes successfully, and suffered the loss of Davon's father when the boy was two. Although the Division provided defendant a home health aide to assist her with her two oldest children in 2007, she was first substantiated for abuse and neglect following Davon's birth in May 2009, after they both tested positive for cocaine.

When defendant admitted smoking crack cocaine throughout her pregnancy, the Division removed all three children from her care, placing the two older children with their father, R.B., and Davon with his father and

paternal grandmother. Defendant went into drug treatment and was admitted into drug court. Dr. Singer evaluated her for the Division and concluded her test results suggested Narcissistic Personality Disorder with schizoid and antisocial features, and found she was "experiencing symptoms consistent with Bi-Polar Disorder mixed with feelings of anxiety." Dr. Singer's opinion was that defendant should be reunited with her children only if she continued in drug treatment and could demonstrate continued sobriety.

Although suffering some setbacks in her sobriety, defendant successfully completed drug treatment, the Division assisted her in obtaining affordable housing, she got a job and was reunited with her children in the summer of 2010. Defendant continued to struggle with her sobriety, but went back to school, continued in drug treatment and participated in services geared to strengthening her parenting skills.

Davon's father died in the fall of 2011 after an illness. Defendant thereafter struggled with housing and employment. She kept in close contact with the Division, however, and it assisted her with obtaining affordable housing and provided her homemaker services early in 2012. Defendant graduated from drug court in May 2012, and the Division closed her case shortly thereafter.

4

Five years later, in the fall of 2017, the Division became re-involved with the family after receiving reports that defendant was again using cocaine. The Division substantiated defendant for abuse and neglect after she tested positive for cocaine in December 2017. Defendant was unemployed, and her home was in foreclosure. The Division again removed Davon, then eight-years-old, from her care in January 2018 and placed him in a non-relative resource home. Defendant's other children were living with their father.

Defendant's involvement with the Division this time, however, was different. Defendant did not participate in drug treatment, despite the Division's many efforts to engage her in treatment. She failed to stay in contact with the Division and rarely visited Davon, although he was desperate to see her, and she very obviously loved him. His behavior at school worsened; he would walk out of classrooms and was disciplined for fighting. On the recommendation of his school, he was enrolled in the Rutgers Challenge Program for education services and therapy. Defendant admitted to the Division's caseworker that she could not abstain from cocaine for any length of time. She became homeless.

In December 2018, the court approved the Division's goal of adoption for Davon, and it filed its complaint for guardianship in early 2019. Defendant

knew she was at risk of losing Davon forever, and acknowledged to the case worker she knew she had to get sober, but still did not enter drug treatment. She continued to visit only rarely. She missed Davon's graduation from the Rutgers program and admitted to the caseworker she did not visit because she did not want her son to see her in the condition she was in. She did not appear at appointments for psychological and bonding evaluations and failed to appear for the guardianship trial.

The Division presented the testimony of the assigned permanency worker, as well as the assigned adoption worker, an adoption supervisor and Dr. Singer, and entered its records in evidence, subject to appropriate hearsay objections. Neither defendant nor the Law Guardian called any witnesses or offered anything in evidence.

The Division workers testified that defendant initially offered only her brother Aaron as someone who could care for Davon. He was ruled out in mid-2018 because his apartment was too small to accommodate his nephew. The court subsequently ordered defendant to supply the Division with additional names, which she eventually did. In December 2018, she suggested another brother, Jim, and his wife, as well as Davon's paternal aunt. The

A-0267-19T3

Division also contacted the father of defendant's two older children, but he refused to take the Division's calls.

Defendant's brother Jim and his wife were interested in assuming Davon's care and Davon likewise expressed his desire to live with them in the event his mother couldn't regain custody. Davon's aunt and her wife also expressed interest in providing a home for Davon. Neither was employed at the time, however, and they kept several dogs, including a pit bull they initially would not let Division workers see. Davon expressed some fear of the dogs.

The Division pursued Davon's preference for his uncle and initially appeared to rule out Davon's aunt. The Division worked to assess the uncle's home, and he and his wife took Davon with them on a family vacation in the spring of 2019. The Division's plan for Davon's placement and ultimate adoption by his Uncle Jim, however, was thwarted when he and his wife took themselves out of contention just weeks before trial. The Division went back to Davon's aunt, whom it had continued to communicate with in the event adoption by Davon's Uncle Jim fell through. Davon's aunt continued to express interest in adopting Davon. She, however, was in the process of moving to North Carolina, although she and her wife had not yet settled on a

home, delaying the Division's efforts to either place Davon with them or institute an interstate assessment. The adoption worker testified Davon was willing to be adopted by his aunt if adoption by his uncle was not possible. Queried by the worker about his aunt's dogs, Davon told her he had been afraid of them but was not so now.

The Division's adoption supervisor testified that the Division, while hopeful that Davon would be adopted by his aunt and assigning priority to that goal, would concurrently pursue select home adoption. She testified Davon had been diagnosed with adjustment disorder and oppositional defiant disorder. She also noted he had successfully completed the Challenge program and returned to a school setting, where his academic and behavioral challenges were being addressed. Davon was also working with a therapist. The supervisor noted the boy's age, generally pleasant disposition and many interests and expressed confidence he would be adopted, notwithstanding his special needs.

Dr. Singer testified about his 2009 evaluation of defendant and his belief at that time that defendant had a good chance of becoming an adequate parent so long as she complied with certain recommendations, including remaining

drug free. He also testified defendant did not appear for her scheduled appointments with him in this proceeding.

Based on a detailed rendition of the facts adduced at trial and her assessments of the credibility of the witnesses who testified, Judge Grimbergen determined the Division established all four prongs of the best interests standard by clear and convincing evidence. She found defendant's persistent and untreated drug problem posed a substantial risk of harm to Davon, and her failure to timely provide relative resources caused him to remain in an unrelated resource home not committed to his adoption. Defendant's unwillingness to address her problems and failure to even visit Davon regularly during his almost nineteen months in placement demonstrated her inability to eliminate the harm she had caused her son.

Cataloging the many services the Division attempted to provide defendant, the judge concluded the Division easily met its obligation to provide her the services she needed to correct the conditions that led to Davon's placement. The judge also found the Division had explored, without success, alternatives to termination, including assessing all relative placement options, while still expressing the hope that Davon's aunt would be able to become a viable placement for him.

9

Finally, the judge concluded defendant was simply not committed to Davon. Defendant did not complete services or make any meaningful effort to end her cocaine use. She failed to consistently visit her son or maintain contact with the Division. She failed to participate in psychological or bonding evaluations and didn't appear at trial. The judge found Davon wanted to be reunified with his mother, but the evidence demonstrated overwhelmingly that she is incapable of becoming an option for him, and accordingly, that termination of defendant's parental rights would not do more harm than good.

Our review of a trial court's decision to terminate parental rights is limited. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012). We generally "defer to the factual findings of the trial court because it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293 (2007)).

Our review convinces us that Judge Grimbergen's findings are amply supported by the trial testimony. Sadly, defendant never managed to get free

10

of her drug problem so as to provide Davon with a safe and stable home at any point, and she let months go by without any effort to see him. "A parent's withdrawal of that solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child." In re Guardianship of D.M.H., 161 N.J. 365, 379 (1999).

We reject defendant's argument that the Division did not properly conduct permanency planning for Davon and that the trial judge failed to consider alternatives to terminating her parental rights. There is a statutory preference for the temporary placement of children with suitable relatives pending the ultimate determination of the children's future. N.J.S.A. 30:4C-12.1(a). Although it is the Division's goal "to place, whenever possible, children with relatives," N.J. Div. of Youth & Family Servs. v. K.F., 353 N.J. Super. 623, 636 (App. Div. 2002), "there is no presumption in favor of placement with relatives." N.J. Div. of Youth and Family Servs. v. K.L.W., 419 N.J. Super. 568, 580 (App. Div. 2011). "[U]ltimately the question is what was in [the child's] best interest based upon the circumstances as they existed at the time of the final hearing." N.J. Div. of Youth & Family Servs. v. M.F., 357 N.J. Super. 515, 527 (App. Div. 2003).

A-0267-19T3

We are satisfied the Division properly assessed potential relatives for placement. We find nothing inappropriate in the Division's determination to prioritize Davon's placement with his Uncle Jim. Jim and his wife expressed their commitment to Davon, visited him, and included him in a family vacation. Moreover, Davon expressed an unqualified desire to live with his uncle and his family if his mother couldn't reassume his care. That they unfortunately changed their minds about adopting him just before trial doesn't make the Division's decision to prioritize them over Davon's aunt unreasonable.

Further, defendant points to nothing in the record to support her assertion that the termination of her parental rights should have been delayed until the Division's assessment of Davon's aunt was complete. At the time of trial, Davon's aunt had not provided an address in North Carolina to permit the Division to begin an interstate assessment of her new home. And there is nothing in the record to indicate the assessment could occur quickly or that its success was guaranteed. The salient facts were that Davon had already been in placement for almost nineteen months, a return to defendant's care was untenable, and the judge believed the witness's testimony that select home adoption was a viable alternative for Davon.

Defendant's remaining arguments, to the extent we have not addressed them, lack sufficient merit to warrant discussion in a written opinion.  See R. 2:11-3(e)(1)(E).

We are satisfied the record supports the judge's findings that Davon's safety, health and development were endangered by defendant, who, unwilling or unable to eliminate the harm, refused and failed to complete the services offered, that there were no viable alternatives to termination, and that termination of her parental rights will not do more harm than good.  We affirm the judgment substantially for the reasons expressed by Judge Grimbergen in her written opinion of August 14, 2019.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION